1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

8

E.S., a minor, et al.,

9                    Plaintiffs,

10        v.

11   CITY OF VISALIA; TIM HAENER,
     and DOES 2-10, inclusive,

12                    Defendants.

13

14

CASE NO.: 1:13-cv-01697-LJO-BAM

**ORDER DENYING DEFENDANTS' *EX PARTE* APPLICATION FOR ORDER TO SHOW CAUSE WHY A CONTEMPT CITATION SHOULD NOT ISSUE**

(Doc. 66)

15
16
17
18
19
20

On June 17, 2015, Defendants City of Visalia and Tim Haener ("Defendants") filed an application for an order to show cause why third-party witness Danny Ceballos ("Mr. Ceballos") should not be held in civil contempt for failure to appear at his June 8, 2015 deposition pursuant to subpoena. (Doc. 66.) On June 26, 2015, the Court directed Plaintiffs to file a response to the *ex parte* application. (Doc. 67.) On June 30, 2015, Plaintiffs filed the declaration of Mr. Ceballos. (Doc. 68.)

21
22

For the reasons that follow, Defendants' *ex parte* application shall be denied.

**I.   Background**

23
24
25

Plaintiffs initiated this civil rights action, arising from the fatal police shooting of Armando Santibanez, on October 21, 2013. (Doc. 1.) This action proceeds on Plaintiff's third amended complaint. (Doc. 46.)

26
27
28

On June 30, 2014, the Court issued a Scheduling Conference Order, which provided that all non-expert discovery, including motions to compel, must be completed no later than

June 16, 2015.  The order also cautioned the parties that their "failure to have a discovery dispute heard sufficiently in advance of the discovery cutoff may result in denial of the motion as untimely." (Doc. 41, p. 3.)

On June 12, 2015, the Court held an informal telephonic conference regarding Defendants' request to modify the Scheduling Conference Order to complete additional depositions, which presumptively included Mr. Ceballos' deposition.    Finding that Defendants failed to establish good cause for modifying the Scheduling Conference Order, the Court denied Defendants' request to extend the discovery deadline to complete additional depositions.  (Doc. 26.)

On June 17, 2015, after expiration of the discovery deadline, Defendants filed the instant *ex parte* application for an order to show cause why a contempt citation should not issue against Mr. Ceballos for his reported failure to comply with a subpoena to attend his deposition.  Mr. Ceballos' deposition was noticed for June 8, 2015.  (Doc. 66.)

On June 26, 2015, the Court directed Plaintiffs to file a response to the application. (Doc. 67.)

On June 30, 2015, Plaintiffs submitted the declaration of Mr. Ceballos in opposition to the *ex parte* application.  Mr. Ceballos declares under penalty of perjury that he has not been served with any documents for this lawsuit.  (Doc. 68 at ¶ 11.)

**II. Discussion**

    **A.  Defendants' Position**

Defendants report that a deposition subpoena was issued on May 27, 2015, and sent out for service on Mr. Ceballos for a deposition to take place on June 8, 2015.  (Doc. 66-2, Ex. A.)   On May 30, 2015, a claims investigator arrived at 926 S. Indiana Street, in Porterville, California, to serve the subpoena on Mr. Ceballos.  The investigator reportedly saw Mr. Ceballos standing between four vehicles parked in the driveway.  Mr. Ceballos was identified by comparing his face to photographs from his Facebook page.   When Mr. Ceballos saw the investigator, he immediately took off running into the house.   The investigator went to the front door and knocked.  Although he could hear people talking and

moving around, the investigator could not get anyone to open the door.  All of the windows had black shades blocking the view inside and there appeared to be a surveillance camera above the front porch.  (Doc. 66-3, Decl. of Russell Hilyard at ¶¶ 2-5.)

The investigator then called a cellular phone number associated with Mr. Ceballos, (559) 719-5029, and could hear a phone ringing inside of the home.  The call went to an automated response and no message could be left.  The investigator called the number two more times.  The next attempt was heard ringing from inside the residence and went to the automated message.  The last attempt went directly to the automated message.  (Id. at ¶ 6.)

On June 5, 2015, the investigator returned to 926 S. Indiana Street.  When he drove by, the investigator saw Mr. Ceballos standing outside talking to other males his age.  The investigator parked a distance from the home and walked to where he could see Mr. Ceballos and his companions.  After some time, a couple of the males left in a silver truck. (Id. at ¶ 7.)

At 6:35 p.m., the investigator walked into the yard and said "Danny."  When Mr. Ceballos turned, the investigator told him he had a subpoena for him and held it out.  Mr. Ceballos yelled at the investigator to get off his property and appeared angry.  Mr. Ceballos began to walk towards the investigator, who set the subpoena down and let Mr. Ceballos know that he had been served.  Mr. Ceballos said that the paper meant nothing to him.  The investigator then left the area.  Approximately 15 minutes later, the investigator drove by the home and saw small pieces of paper where he had set the subpoena down.  (Id. at ¶¶ 8-9.)

Mr. Ceballos failed to appear for his deposition on June 8, 2015.  (Doc. 66-2, Decl. of Leonard C. Herr at ¶ 5.)

**B.  Mr. Ceballos' Position**

In response, Mr. Ceballos declares under penalty of perjury that he never fled from any process server on May 30, 2015, or on any date.  (Doc. 68, Decl. of Danny Ceballos at ¶ 3.)  The phone number that the investigator called has not been Mr. Ceballos' phone number since at least January 2015, and Mr. Ceballos has no surveillance cameras at his residence. (Id. at ¶¶ 12, 13.)  The investigator's statement regarding the interaction on June 5, 2015,

1    never happened with Mr. Ceballos.  (Id. at ¶ 7.)  Instead, Mr. Ceballos reports that he

2    worked at Vallarta, a supermarket, until about 4:30 p.m. that day.  He stopped by his

3    residence to pick up his children and then went directly to Bridget Flores' apartment on E

4    Street.  Mr. Ceballos was at her apartment by 5:00 p.m.  Mr. Ceballos then drove from

5    Bridget Flores' apartment to Tulare, with Ms. Flores and his children.  He left the city of

6    Porterville around 6:15 p.m. so that he could be in Tulare by 7:00 p.m.  Mr. Ceballos was

7    meeting his father and others at Puerto Vallarta, a restaurant in Tulare, to celebrate his

8    father's birthday.  It takes approximately 45 minutes to drive from Porterville to Tulare.  (Id.

9    at ¶¶ 8-10.)  Mr. Ceballos reports that as of June 30, 2015, he has not been served with any

10   documents for this lawsuit.  (Id. at ¶ 11.)

11            **C.  Analysis**

12           As a preliminary matter, Defendants' *ex parte* application is untimely.  As noted

13   above, the non-expert discovery deadline expired on June 16, 2015.  In contravention of the

14   Scheduling Order, Defendants filed the instant application after the expiration of the

15   relevant deadline.  Defendants provide no explanation for the delay.  More importantly,

16   Defendants provide no explanation as to why they elected to file this application following

17   the informal discovery conference.  During that conference, the Court expressly determined

18   that the non-expert discovery deadline would not be extended for the purpose of taking

19   additional depositions.

20           Furthermore, even if Defendants' application was timely, Defendants have failed to

21   establish that they complied with Federal Rule of Civil Procedure 45(b)(1) regarding the

22   tendering of witness fees and service of the subpoena.  Pursuant to Rule 45(b), serving a

23   subpoena "requires delivering a copy to the named person and, if the subpoena requires that

24   person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by

25   law." Fed. R. Civ. P. 45(b)(1).

26           Here, the proof of service of the subpoena to testify at the deposition indicates that

27   no witness fees or mileage were tendered to Mr. Ceballos.  (Doc. 66-2, Ex. C.)

28           Additionally, Defendants have not established that they properly served the

deposition subpoena on Mr. Ceballos.  As noted above, serving a subpoena requires "delivering a copy to the named person," which is interpreted to mean personal service. Fed. R. Civ. P. 45(b)(1); see Morgutia-Johnson v. City of Fresno, No. 1:14-cv-00127-LJO-SKO, 2015 WL 1021123, at *2-3 (E.D. Cal. Mar. 9, 2015) (serving subpoena requires personal service); Prescott v. Cnty. of Stanislaus, No. 1:10–cv–00592 JLT, 2012 WL 10617, at *3 (E.D. Cal. Jan. 3, 2012) (noting that a majority of courts interpreting "delivering" to require personal service).

In this instance, Mr. Ceballos has refuted Defendants' claim that they served him with a deposition subpoena on June 5, 2015.  According to Mr. Ceballos' sworn declaration, he was not at his home at 6:35 p.m. on June 5, 2015, the date he was reportedly served, and he has not been served with any documents for this lawsuit.  (Doc. 68, Decl. of Danny Ceballos at ¶¶ 9, 11.)  Mr. Ceballos also has denied fleeing from the investigator or possessing the phone number reportedly called by the investigator.  (Id. at ¶¶ 3, 12.)  As there is no indication that Defendants in fact personally served Mr. Ceballos with a deposition subpoena, they are not entitled to a contempt order.  Fed. R. Civ. P. 45(g); see, e.g., Morgutia-Johnson, 2015 WL 1021123, at *2-3 (citing FTC v. Enforma Natural Products, Inc., 362 F.3d 1204, 1211 (9th Cir. 2004), (proper subpoenas are treated as orders of the court; to establish civil contempt, moving party must show by clear and convincing evidence that non-moving party violated a specific order of the court).  Therefore, an order to show cause is unnecessary.

### III. Conclusion and Order

Based on the foregoing, Defendants' *ex parte* application for order to show cause why a contempt citation should not issue, filed on June 17, 2015, is HEREBY DENIED.

IT IS SO ORDERED.

Dated:   **July 2, 2015**                    */s/ Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE